# EXHIBIT C

Case 1:07-cv-06072-JGK-DCF   Document 12-4   Filed 09/18/2007   Page 1 of 11



Home | Previous Page

**U.S. Securities and Exchange Commission**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Securities and Exchange Commission, | |
| Plaintiff, | |
| v. | COMPLAINT |
| MUTUALS.COM, INC., CONNELY DOWD MANAGEMENT, INC., MTT FUNDCORP, INC., RICHARD SAPIO, ERIC MCDONALD and MICHELE LEFTWICH, | Civil Action No.303 CV 2912D |
| Defendants. | |

Plaintiff Securities and Exchange Commission alleges the following:

### SUMMARY

1. From at least July 2001 until September 2003, Mutuals.com, Inc. ("Mutuals.com"), and two affiliated broker-dealers, Connely Dowd Management, Inc. ("CDM") and MTT Fundcorp, Inc. ("MTT"), provided market timing and late trading services on behalf of at least 18 institutional clients, including various hedge funds. Mutuals.com, CDM and MTT, and the firms' three principals, Richard Sapio, Eric McDonald and Michele Leftwich, defrauded hundreds of mutual funds and their shareholders by engaging in a series of deceptive activities designed to circumvent the restrictions on market timing imposed by those mutual funds. In addition, during 2003, the defendants defrauded many of the same mutual funds and their shareholders by systematically engaging in late trading in the funds' shares.

2. As a consequence of the conduct alleged herein, the defendants caused harm to mutual fund companies and their shareholders by diluting the value of the mutual fund shares and increasing the transaction costs associated with the management of the mutual funds.

Complaint: Mutuals.com, Inc., Conely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF    Document 12-4    Filed 09/18/2007    Page 3 of 11

3. Through the activities alleged in this Complaint, each of the defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), and violated and aided and abetted violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; Mutuals.com, CDM and MTT violated, and Sapio, McDonald and Leftwich aided and abetted violations of Section 15(c)(1) of the Exchange Act; and Mutuals.com, CDM and MTT violated Rule 22c-1 promulgated under the Investment Company Act of 1940 ("Investment Company Act").

4. The Commission therefore seeks: (i) entry of a permanent injunction prohibiting the defendants from further violations of the relevant provisions and rules of the Securities Act, Exchange Act and Investment Company Act; (ii) disgorgement of all ill-gotten gains, plus prejudgment interest; and (iii) the imposition of third-tier civil penalties against each defendant due to the egregious nature of their violations.

## JURISDICTION AND VENUE

5. The Commission seeks a permanent injunction and disgorgement of ill-gotten gains pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] and Section 42(d) of the Investment Company Act [15 U.S.C. § 80a-41(d)]. The Commission seeks the imposition of civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 42(e) of the Investment Company Act [15 U.S.C. § 80a-41(e)].

6. This Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d) and 77v(a)], Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa] and Sections 42(d) and 44 of the Investment Company Act [15 U.S.C. §§ 80a-41(d) and 80a-43]. Venue is proper in this district because many of the acts and transactions alleged in this Complaint occurred in this district and each of the defendants resides in this district.

7. In connection with the conduct described in this Complaint, defendants directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

## DEFENDANTS

8. Mutuals.com, of Dallas, is dually registered with the Commission as a broker-dealer (since August 8, 1994) and investment adviser (since November 9, 1999). In its role as a broker-dealer, Mutuals.com distributes the shares of an affiliated fund family, Mutuals.com Trust, and assists hedge funds and other institutional investors in purchasing shares of unrelated, third party mutual funds. In its role as an investment adviser, Mutuals.com manages the Mutuals.com Trust, and provides investment advice, pursuant to an advisory agreement, to its private clients. Mutuals.com and its affiliated broker-dealers are wholly owned by Mutuals.com Holdings, Inc., a private

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF     Document 12-4     Filed 09/18/2007     Page 4 of 11

corporation, majority owned and controlled by Sapio.

9. Connely Dowd Management, Inc., of Dallas, is a registered broker-dealer and an affiliate of Mutuals.com. Its registration became effective with the Commission on March 31, 2003.

10. MTT Fundcorp, Inc., of Dallas, is a registered broker-dealer and an affiliate of Mutuals.com. Its registration became effective with the Commission on March 31, 2003.

11. Richard Sapio, age 37, is the CEO and control person of Mutuals.com, its affiliated broker-dealers and its holding company. Among other positions, Sapio is the Financial and Operations Principal for Mutuals.com, CDM and MTT. Sapio lives in Dallas.

12. Eric McDonald, age 35, is Mutuals.com's President. As President of Mutuals.com, McDonald is responsible for all mutual fund trading at Mutuals.com and serves as the company's Assistant Supervisory Officer. Among other positions, McDonald is a General Securities Principal for Mutuals.com, CDM and MTT. McDonald lives in DeSoto, Texas.

13. Michele Leftwich, age 35, is Mutuals.com's Compliance Officer. She also serves as Mutuals.com's Chief Supervisory Officer and oversees all trading activities at Mutuals.com. Among other positions, Leftwich is a General Securities Principal for Mutuals.com, CDM and MTT. Leftwich lives in Dallas.

### THE FRAUDULENT SCHEME

**Background**

14. During the relevant period, Mutuals.com had at least 18 clients, the majority of which were institutional investors, and several of which were hedge funds, for which it facilitated trades of third party mutual fund shares. Mutuals.com's primary business purpose with respect to those clients was to provide market timing and/or late trading services.

15. Market timing refers to the practice of short-term buying and selling of mutual fund shares in order to exploit inefficiencies in mutual fund pricing. Market timing, while not illegal *per se*, can adversely affect mutual fund shareholders because it can dilute the value of their shares to the extent that a timer is permitted to buy and sell shares rapidly and repeatedly to take advantage of arbitrage opportunities. In addition, market timing raises transaction costs for the fund.

16. Mutual funds often maintain policies and procedures to detect and prevent market timing. Mutual funds try to prevent market timing by prohibiting additional trades in their funds' shares after a customer has placed a certain number of trades. To enforce these limits, the mutual funds typically identify the customers and brokers placing trades in the funds'

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF   Document 12-4   Filed 09/18/2007   Page 5 of 11

shares by tracking the broker identification numbers and/or the customer account numbers.

17. Late trading refers to the practice of placing orders to buy or sell mutual fund shares after the close of the market at 4:00 p.m. EST, but at the mutual fund's net asset value ("NAV"), or price, determined at the market close. Late trading enables the trader to profit, at the expense of other shareholders, from market events that occur after 4:00 p.m. EST, but that are not reflected in the previously calculated NAV.

18. Mutuals.com maintained brokerage and investment advisory relationships with each of its clients, and received a "wrap fee" between .75% and 2% of the money it managed for the clients.

19. At the direction and with the full knowledge, approval and assistance of the defendants, Mutuals.com's clients consummated thousands of market timing and late trades in hundreds of mutual funds.

**Market Timing Activity**

20. Sapio, McDonald and Leftwich were aware that mutual fund companies deemed market timing to be improper and unacceptable.

21. From at least March 2001 to September 2003, mutual fund companies sent Mutuals.com, through its clearing agencies, hundreds of warning letters, notices, or emails blocking them from trading in mutual funds due to their market timing activities.

22. Mutuals.com kept records tracking the numerous mutual funds that restricted or prohibited it or its clients from trading in those funds' shares.

23. Despite these warnings, the defendants used several means to deceive the fund and evade detection of ongoing market timing activity so that their clients could continue short term trading.

24. These deceptive activities included: (a) formation and registration of two affiliated broker-dealers (CDM and MTT) through which they could continue to market time undetected; (b) changing account numbers for blocked client accounts; (c) use of alternative registered representative numbers when their registered representatives were blocked from trading by mutual funds; (d) use of different branch identification numbers to disguise their trading activities; (e) switching clearing firms to conceal their trading activities; and (f) suggesting that their clients use third party tax identification numbers or social security numbers to disguise their identities, so that they could continue to trade in funds from which they had been banned.

25. For example, on June 19, 2001, Pioneer Investments notified Mutuals.com that it would no longer accept trades from Mutuals.com account numbers 4MU-027966 and 4MU-028923 because of market timing activity.

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF    Document 12-4    Filed 09/18/2007    Page 6 of 11

On June 28, 2001, Mutuals.com opened two new accounts for the client, Nos. 4MU-030176 and 4MU-030192, to avoid the trading restrictions. Using these new account numbers, Mutuals.com consummated at least 12 additional trades in Pioneer Investments' Funds on behalf of the client.

26. On February 26, 2002, one of Mutuals.com's clearing firms, Pershing LLC, sent to Sapio a list of approximately 294 mutual fund companies that had complained to Pershing about Mutuals.com's market timing trading. Pershing restricted Mutuals.com from any and all market timing trading with regard to these mutual funds.

27. On February 26, 2002 and again on March 4, 2002, Pershing notified Sapio that Mutuals.com was barred from market timing activity in the Goldman Sachs Funds. Nonetheless, between June 11, 2003 and September 8, 2003, Sapio, McDonald and Leftwich facilitated market timing trades at Goldman Sachs Funds using the affiliated broker-dealers, CDM and MTT, thus avoiding the trading restrictions.

28. On May 15, 2002, Pershing sent an email to Sapio, which described Mutuals.com's market timing trading business:

> Both Rick Sapio and Eric McDonald know the position that they have put us in relative to these fund groups — and they will openly state that their customers will continue to seek places where this type of activity is allowed until the breaking point is hit. . . . It's not unlike a rock band which knows that they continue to trash hotel rooms on their tours — and as soon as Hyatt throws them out, they'll move on to Hilton, then Marriot, then somebody else. They know it's coming each time, and they'll just keep moving to the next outlet as long as they can continue to play the game. . . . At the same time, Mutuals.com is in no hurry to turn off the customers — there's revenue in the tickets and value in having the assets on the books for as long as the gig is on.

29. On September 9, 2002, Pershing sent an email to Sapio and McDonald notifying Mutuals.com that registered representative No. 81 had been barred from future trading activities in the ARTIX fund. On or about September 13, 2002, McDonald and Leftwich changed registered representative "No. 81" to "No. 90" in order to circumvent the bar. Shortly thereafter, registered representative No. 90 resumed trading in ARTIX shares. Subsequently, on December 6, 2002, ARTIX blocked any future trading from registered representative No. 90.

30. On May 13, 2003, McDonald sent a letter to a customer explaining that Mutuals.com and its affiliated brokerages would be used as necessary to ensure that market timing capacity was maintained.

31. In assisting clients with their market timing activity, the defendants misrepresented and concealed their identity and the identities of their clients. That information was material; it prevented the mutual funds from restricting the short term trading activity that the mutual funds were trying to prevent.

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF    Document 12-4    Filed 09/18/2007    Page 7 of 11

**Late Trading Activity**

32. During at least 2003, Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich, as dealers of securities issued by registered investment companies, facilitated the late trading of mutual fund shares on behalf of their clients.

33. The defendants routinely received trading instructions from their customers after 4:00 p.m. EST and executed those trades as if the instructions had been received prior to 4:00 p.m. EST.

34. Mutuals.com, CDM and MTT, at the direction and with the full knowledge, approval and assistance of Sapio, McDonald and Leftwich, enabled their customers to receive same-day NAV pricing on trades that were communicated to Mutuals.com after the close of trading. The defendants concealed the late trading activity by omitting portions of the trading information they were required to provide to their clearing agents.

35. Throughout at least 2003, one of Mutuals.com's clients instructed Mutuals.com to make trades after 3:00 p.m. CST/ 4:00 p.m. EST. On May 28, 2003, McDonald confirmed in an email to the client that Mutuals.com would facilitate late trades that were placed after 4:00 p.m. EST. In addition, on June 19, 2003, Sapio told the client that it had until 3:30 p.m. CST "to get all trades in."

36. Mutuals.com, with the knowledge and approval of Sapio, McDonald and Leftwich, in fact facilitated numerous orders for clients after the 4:00 p.m. EST trading deadline.

37. Mutuals.com, with the knowledge and approval of Sapio, McDonald and Leftwich, failed to disclose to the mutual funds that they received trading instructions from clients after the 4:00 p.m. EST deadline.

**Mutuals.com's Fees from its Illegal Activities**

38. Mutuals.com earned $2,030,048 during 2001, $2,891,405 during 2002 and more than $3 million during the first 10 months of 2003. Of that amount, approximately $398,000, $1,368,788 and $2,813,926, respectively, represented wrap fees received from its 18 primary clients.

39. As market timing and late trading were the primary purpose of Mutuals.com's wrap fee business, the vast majority of wrap fees are attributable to the illegal trading activities.

**Admissions**

40. McDonald acknowledged to the Commission in a written memorandum that Mutuals.com had employed certain "tactics" in executing trades for the clients, including (a) keeping transaction sizes as small as possible; (b)

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF   Document 12-4   Filed 09/18/2007   Page 8 of 11

rotating mutual funds so that the same funds were not used over and over again; (c) using omnibus funds so that the trade is batched with other orders; (d) changing representative numbers; (e) opening multiple accounts; and (f) using multiple clearing firms, custodians and introducing broker/dealers.

41. Each of the tactics described above was designed to avoid the trading restrictions established by mutual funds for the benefit of their customers.

42. On November 13 and 14, 2003, Sapio, McDonald and Leftwich acknowledged in sworn testimony that they had knowingly engaged in the market timing and late trading activities alleged above.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 17(a) of the Securities Act)

43. Plaintiff repeats and realleges paragraphs 1 through 42 above.

44. Defendants Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich, directly and indirectly, acting intentionally, knowingly or recklessly, in the offer or sale of securities by the use of the means or instrumentalities of transportation or communication in interstate commerce or by use of the mails: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices or courses of business which operated as a fraud or deceit upon purchasers of securities.

45. As a result, defendants Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich intentionally, knowingly or recklessly violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)

46. Plaintiff repeats and realleges paragraphs 1 through 45 above.

47. Defendants Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich, directly or indirectly, acting intentionally, knowingly or recklessly, by the use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon certain persons.

48. As a result, defendants Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich intentionally, knowingly or recklessly violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule l0b-5 [17 C.F.R. § 240.10b-5] thereunder.

49. Further, the defendants Mutuals.com, CDM, MTT, Sapio, McDonald and Leftwich knowingly or recklessly provided substantial assistance to, and thus aided and abetted, the uncharged violations of Section 10(b) of the Exchange Act and Rule 10b-5 committed by their clients in connection with the market timing and late trading transactions alleged above.

### THIRD CLAIM FOR RELIEF
### (Violations of Section 15(c)(1) of the Exchange Act)

50. Plaintiff repeats and realleges paragraphs 1 through 49 above.

51. Defendants Mutuals.com, CDM and MTT, directly or indirectly, and by the use of the means or instrumentalities of interstate commerce or of the mails, effected transactions in, or induced or attempted to induce the purchase or sale of a security by means of a manipulative, deceptive, or other fraudulent device or contrivance.

52. As a result, defendants Mutuals.com, CDM and MTT, acting with knowledge or with reasonable grounds to believe that they had made an untrue statement or omission of material fact, violated Section 15(c)(1) of the Exchange Act. [15 U.S.C. § 78o(c)(1)].

53. Defendants Sapio, McDonald and Leftwich knowingly or recklessly provided substantial assistance to, and thus aided and abetted, violations of Section 15(c)(1) of the Exchange Act committed by Mutuals.com, CDM and MTT alleged above.

### FOURTH CLAIM FOR RELIEF
### (Violations of Rule 22c-1 Promulgated Under Section 22(c) of the Investment Company Act of 1940)

54. Plaintiff repeats and realleges paragraphs 1 through 53 above.

55. As registered broker-dealers, which cleared transactions through various clearing firms, Defendants Mutuals.com, CDM and MTT are authorized to consummate transactions in the mutual fund's shares.

56. Defendants Mutuals.com, CDM and MTT, by engaging in the conduct described above, sold, redeemed or repurchased the shares of registered investment companies at prices not based upon the current net asset value of such securities computed after receipt the orders to sell, redeem, or repurchase the shares of such registered investment companies.

57. By engaging in the conduct described above, defendants Mutuals.com,

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF   Document 12-4   Filed 09/18/2007   Page 10 of 11

CDM and MTT violated Rule 22c-1 [17 C.F.R. § 270.22c-1], promulgated under Section 22(c) of the Investment Company Act of 1940 [15 U.S.C. § 80a-22(c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Enter a permanent injunction restraining the defendants and their respective agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in violations of, or aiding and abetting violations of, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b) and 15(c)(1) of the Exchange Act [15 U.S.C. § 78j(b) and § 78o(c)(1)] and Rule l0b-5 thereunder [17 C.F.R. §240.10b-5]; and Rule 22c-1 promulgated under the Investment Company Act [17 C.F.R. § 270.22c-1].

### II.

Order the defendants to disgorge their ill-gotten gains, plus pre-judgment interest.

### III.

Order each defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [5 U.S.C. §77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)] and Section 42(e) of the Investment Company Act [15 U.S.C. § 80a-41(e)].

### IV.

Award such other and further relief as the Court deems just and proper.

December 4, 2003

Respectfully submitted,

_____
J. KEVIN EDMUNDSON
D.C. Bar No. 430746
SECURITIES AND EXCHANGE COMI
Fort Worth District Office
801 Cherry Street, 19th Floor
Fort Worth, Texas 76102
(817) 978-1411

Complaint: Mutuals.com, Inc., Connely Dowd Management, Inc., MTT Fundcorp, Inc., Richard Sapio, Eric Mcdonald and Michele Leftwich; LR18489

Case 1:07-cv-06072-JGK-DCF     Document 12-4     Filed 09/18/2007     Page 11 of 11

(817) 978-4927 (fax)

OF COUNSEL:

Spencer C. Barasch
Stephen J. Korotash
Alan M. Buie
Robert C. Hannan
Adan D. Araujo
Michael D. King

SECURITIES AND EXCHANGE COMMISSION
Fort Worth District Office

*http://www.sec.gov/litigation/complaints/comp18489.htm*

Home | Previous Page                                                      Modified: 12/4/2003